1   ARNOLD & PORTER LLP
    PAMELA PHILLIPS (No. 87581)
2   Pamela.Phillips@aporter.com
    JONATHAN W. HUGHES (No. 186829)
3   Jonathan.Hughes@aporter.com
    DIANA D. DiGENNARO (No. 248471)
4   Diana.DiGennaro@aporter.com
    Three Embarcadero Center, 10th Floor
5   San Francisco, California 94111-4024
    Telephone:    415.471.3100
6   Facsimile:    415.471.3400

7   Attorneys for Defendant
    ORRICK, HERRINGTON & SUTCLIFFE LLP
8

**CRB**

**CV  13  2192**

9                UNITED STATES BANKRUPTCY COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  | In re: | Case No. 08-32514-DM |
14  | HELLER EHRMAN LLP, | Adv. Proc. No. 10-03234 |
15  | Liquidating Debtor. | Action Filed: December 1, 2010 |
16  | | **DEFENDANT ORRICK, HERRINGTON** |
    | HELLER EHRMAN LLP, liquidating debtor, | **& SUTCLIFFE LLP'S MEMORANDUM** |
17  | | **OF POINTS AND AUTHORITIES IN** |
    | Plaintiff, | **SUPPORT OF MOTION FOR LEAVE TO** |
18  | | **APPEAL** |
    | v. | |
19  | | |
    | ORRICK, HERRINGTON & SUTCLIFFE | |
20  | LLP, | |
21  | Defendant. | |

22

23

24

25

26

27

28

1

TABLE OF CONTENTS

|  | | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| STATEMENT OF FACTS AND PROCEDURAL HISTORY | | 2 |
| QUESTION PRESENTED | | 3 |
| ARGUMENT | | 3 |
| I. | Applicable Legal Standard. | 3 |
| II. | The Summary Judgment Order Involves A Controlling Question Of Law. | 4 |
| III. | An Immediate Appeal From The Summary Judgment Order Will Materially Advance The Ultimate Termination Of This Litigation And Could Avoid Three Jury Trials And One Bench Trial. | 4 |
| IV. | Substantial Grounds For Difference Of Opinion Exist As To Whether A Law Firm Such As Heller Ever Had A Property Interest In Future Profits Other Law Firms Would Earn On Hourly Rate Matters Previously Handled By The Dissolved Law Firm. | 6 |
|  | A. This Case Presents Unsettled Questions Of California Partnership And Property Law. | 7 |
|  | B. The District Courts In *Thelen* And *Coudert* Have Concluded That The Property Issue Meets The Grounds For Interlocutory Appeal. | 9 |
|  | C. The District Court's Orders Suggesting Certification In *Thelen* and *Coudert* Are Relevant To The "Substantial Ground For Disagreement" Inquiry On This Motion. | 10 |
| CONCLUSION | | 13 |

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4    *Chambers v. Kay*, 29 Cal. 4th 142 (2002)    8

5    *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert*
   *Bros. LLP)*, 480 B.R. 145 (S.D.N.Y. 2012)    10
6

7    *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert*
   *Bros. LLP)*, Case No. 11-cv-5994 CM, 2012 WL 2952929 (S.D.N.Y. July 18,
8    2012)    4, 9, 10

9    *Fracasse v. Brent*, 6 Cal. 3d 784 (1972)    7

10    *Gaughan v. Edward Dittlof Revocable Trust (In re Costas)*, 555 F.3d 790 (9th Cir.
   2009)    7
11

12    *Geron v. Robinson & Cole LLP (In re Thelen LLP)*, 476 B.R. 732 (S.D.N.Y.
   2012)    8, 9

13    *Granfinanciera, S.A. v. Nordberg* 492 U.S. 33 (1989)    5

14    *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger &*
15    *Harrison LLP)*, 408 B.R. 318 (Bankr. N.D. Cal. 2009)    9, 12

16    *Haw. ex rel. Louie v. JP Morgan Chase & Co.*, No. 12-00263 LEK-KSC, 2013
   WL 391024 (D. Haw. Jan. 29, 2013)    5
17

18    *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07–5944 SC, 2013 WL
   567281 (N.D. Cal. Feb. 13, 2013)    4

19    *In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1982)    4

20    *In re Healthcentral.com*, 504 F.3d 775 (9th Cir. 2007)    1

21    *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984)    2, 7, 11

22    *Krangel v. Crown*, 791 F. Supp. 1436 (S.D. Cal.1992)    5

23

24    *Pilch v. Milikin*, 200 Cal. App. 2d 212 (1962)    7

25    *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011)    6, 12

26    *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004)    12

27    *Santa Clara County Counsel Attorneys Ass'n v. Woodside*, 7 Cal. 4th 525 (1994)    6

28    *WMX Techs., Inc. v. Miller*, 80 F.3d 1315 (9th Cir. 1996)    8

**Statutes**

11 U.S.C. §548     3, 4

28 U.S.C.
   §157     5
   §158(a)(3)     3
   §1292(b)     1, 3, 6

Civ. Code
   §3439.03     3
   §§3439.04-3439.07     4

Corp. Code
   §16103(a)     7, 12
   §16108     11
   §16404     7
   §16404(b)(1)     7, 11

Fed. R. Bankr. Proc.
   8009     13

Bankr. Local Rule
   9015-2(b)     1
   9033-1(c)     2

N.Y. Partnership Law §43(1)     11

R. Prof. Conduct
   1-100(A)     8
   1-320     8
   2-200(A)     8
   2-300     8

**Other Authorities**

State Bar of Cal. Comm. On Prof'l Responsibility & Conduct, Formal Opinion
   1985-86     8

ORRICK'S MPA ISO MOTION FOR LEAVE TO APPEAL

10-03234 DM

1

**INTRODUCTION**

2       The time is right for the District Court to accept an interlocutory appeal in this adversary

3 proceeding. There is nothing further for the Bankruptcy Court to do in this case, and the parties are

4 now ready to proceed to a jury trial in the District Court. However, the Court and parties can moot

5 the need for any trial at all if Orrick's appeal is decided in its favor, because the legal issue to be

6 decided on the appeal is dispositive of *all claims* asserted in the case, including those that would

7 need to be tried to a jury. Thus, for purposes of judicial efficiency, it makes sense to grant the

8 appeal at this time.

9       On March 19, 2013, the Bankruptcy Court granted plaintiff's motion for partial summary

10 judgment, essentially establishing liability against Orrick on the claims for constructive fraudulent

11 transfer. The case is now ready for the reference to be withdrawn and to be transferred to the

12 District Court for a jury trial on the intentional fraudulent transfer claims and on damages under *In

13 re Healthcentral.com*, 504 F.3d 775 (9th Cir. 2007).[1] As its first order of business, the District

14 Court will need to decide whether it should empanel a jury to decide the remaining fraudulent

15 transfer claims and damages, or whether it should first consider the legal viability of plaintiff's

16 argument about "property" that is pivotal to all of Heller's claims. Orrick submits that the most

17 sensible and efficient course is for the District Court to grant the motion and conduct a *de novo*

18 review of the Bankruptcy Court's ruling on the property issue to determine whether there is any

19 reason for any trial at all.

20       The single issue to be presented on the appeal is a novel legal issue of first impression, never

21 having been presented to a California state court for determination. It is also a "controlling question

22 of law as to which there is substantial ground for difference of opinion" within the meaning of 28

23 U.S.C. Section 1292(b). If Orrick wins its appeal, then all of Heller's claims fail—all of the claims

24 in this case; all of the claims in three other Heller adversary proceedings; and all of the claims that

25 the bankruptcy trustee for Brobeck, Phleger & Harrison LLP has asserted against other law firms.

26

27    [1] The Bankruptcy Court has scheduled a status conference for May 7, 2013. Orrick intends to request that the Bankruptcy Court certify the proceeding as trial ready pursuant to Bankruptcy Local

28 Rule 9015-2(b).

1   A favorable ruling would also preclude claims that the bankruptcy trustee for Howrey LLP has

2   announced that he plans to file in the Northern District.  Given that this case is ripe for trial, now is

3   the time to decide this pivotal legal issue important to this and so many pending cases.[2]

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

5         Liquidating Debtor Heller Ehrman LLP ("Heller") dissolved on September 26, 2008,

6   pursuant to a written dissolution plan ("Plan of Dissolution").  *See* ECF No. 64-3.[3]  The Plan of

7   Dissolution included a provision modifying the statutory duty to account for profits derived by the

8   former shareholders on the partnership's unfinished business ("Jewel Agreement").  ECF No. 64-4

9   at 10.  The fraudulent transfer claims in this action are based upon that provision, which provides:

10             [T]he Firm-in Dissolution [Heller Ehrman LLP] will waive any rights
           and claims under the doctrine of Jewel v. Boxer, 156 Cal. App. 3d
11             171 (1984) to seek payment of legal fees generated after the departure
           date of any lawyer or group of lawyers . . . . (*Id.*)
12

13        Plaintiff Heller Ehrman LLP ("plaintiff") initially sued Orrick and some 50 other law firms

14  for constructive and intentional fraudulent transfer claims under state and federal law.  ECF No. 32

15  (Second Amended Complaint).  Plaintiff's theory of the case is that, through the Jewel Agreement,

16  Heller somehow transferred to its own shareholders its alleged future right to collect post-

17  dissolution profits they earned on certain matters, and then that those shareholders, in turn,

18  somehow transferred that right to their new law firms, including Orrick.  *Id.*  Plaintiff contends that

19  these alleged transfers were fraudulent transfers under bankruptcy law, because it claims Heller

20  received less than reasonably equivalent value in exchange for the transfers and the transfers

21  occurred at a time when Heller intended to incur, believed it would incur or should have known that

22  it would incur debts that it was unable to pay as they came due.  *Id.*

23  _____

24  [2] In addition to this motion for leave to file an interlocutory appeal, on March 25, 2013, Orrick also
filed Objections To Bankruptcy Court's Proposed Findings Of Fact And Conclusions Of Law.  *See*
25  ECF No. 152.  Among other things, Orrick's Objections set forth Orrick's arguments concerning
footnote 1 of the Memorandum Decision, and explain that Orrick did not waive any objections to
26  the Bankruptcy Court's exercise of Article III authority in this case.  Pursuant to Bankruptcy Local
Rule 9033-1(c), the Bankruptcy Court Clerk will transmit Orrick's Objections to the District Court
27  by April 22, 2013, which is 28 days after Orrick filed the Objections.

[3] Unless otherwise noted, all ECF docket numbers refer to the docket in Case No. 10-ap-3234
28  (Bankr. N.D. Cal.).

1    Prior to the close of discovery, plaintiff filed a motion for partial summary judgment,

2  seeking summary judgment as to liability on the constructive fraudulent transfer claims. Plaintiff

3  contended that it could "establish as a matter of law a number of specific elements under 11 U.S.C.

4  §548 and Cal. Civ. Code §3439.03, *sufficient to confirm the defendant's liability for a constructive*

5  *fraudulent transfer.*" ECF No. 68 at 1:2-4 (emphasis added). The motion sought summary

6  judgment on four issues, the first of which is the focus of the appeal: whether the Jewel Agreement

7  effected a transfer of property belonging to the debtor. *See id.* The Bankruptcy Court heard

8  argument on that issue on October 15, 2012. On March 11, 2013, the Bankruptcy Court entered its

9  Memorandum Decision (ECF No. 148) on all summary judgment motions, and on March 19, 2013,

10  the Bankruptcy Court entered its Order Granting Plaintiff's Motion for Partial Summary Judgment

11  and Denying Defendant's Cross-Motions for Summary Judgment on Plaintiff's Claims for

12  Constructive Fraudulent Transfer (the "Summary Judgment Order") (ECF No. 150). The court

13  granted plaintiff's motion for partial summary judgment and denied Jones Day's cross-motion for

14  summary judgment, which Orrick had joined.

15                                    **QUESTION PRESENTED**

16    Whether a dissolved law firm, such as Heller Ehrman, ever had any property interest in

17  future fees earned by other law firms where clients chose to hire such other firms to handle the

18  matters that the dissolved firm could no longer handle once it dissolved.

19                                          **ARGUMENT**

20  **I.    APPLICABLE LEGAL STANDARD.**

21    The District Court has discretion under 28 U.S.C. Section 158(a)(3) to hear an appeal of

22  "interlocutory orders and decrees." Although the District Court denied Orrick's motion for leave to

23  file an interlocutory appeal in the *Brobeck* case back in 2010, there have been several important

24  developments since then that are compelling reasons for the Court to grant this motion. In addition,

25  the procedural posture here is different than it was when the motion was presented in *Brobeck*.

26    Under 28 U.S.C. Section 1292(b), an interlocutory appeal is authorized when the "order

27  involves [1] a controlling question of law [2] as to which there is substantial ground for difference

28

1    of opinion and [3] an immediate appeal from the order may materially advance the ultimate

2    termination of the litigation." All three elements are present here.

3
4

## II. THE SUMMARY JUDGMENT ORDER INVOLVES A CONTROLLING QUESTION OF LAW.

5    A question of law is "controlling" if "resolution of the issue on appeal could materially

6    affect the outcome of litigation in the district court." *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

7    No. 07–5944 SC, 2013 WL 567281, at *2 (N.D. Cal. Feb. 13, 2013) (quoting *In re Cement Antitrust*

8    *Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)); *see also Dev. Specialists, Inc. v. Akin Gump Strauss*

9    *Hauer & Feld LLP (In re Coudert Bros. LLP)*, Case No. 11-cv-5994 CM, 2012 WL 2952929, at *5

10    (S.D.N.Y. July 18, 2012) ("*Coudert II*") ("Clarification of unsettled default rules will also be of

11    importance to the crafting of partnership agreements going forward. While precedential value is not

12    necessary to find a question 'controlling,' it is a relevant consideration that points in favor of

13    certification in this case").

14    There is no doubt that the question presented for appeal in this case is controlling, because

15    reversal of the Bankruptcy Court's holding would, as a matter of law, preclude Heller from

16    establishing liability on all of its claims—both the claims decided on summary judgment and those

17    remaining for trial. Thus, a reversal would immediately cause "the ultimate termination of the

18    litigation," obviating any need for a jury trial. The reason for this is that all of plaintiff's claims

19    have a common critical element: each claim depends on Heller having possessed, prior to its

20    dissolution, an enforceable interest in the "property" allegedly transferred. *See* 11 U.S.C. §548;

21    Cal. Civ. Code §§3439.04-3439.07.

22
23
24

## III. AN IMMEDIATE APPEAL FROM THE SUMMARY JUDGMENT ORDER WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION AND COULD AVOID THREE JURY TRIALS AND ONE BENCH TRIAL.

25    The second factor for consideration is whether an interlocutory appeal may "materially

26    advance the ultimate termination of the litigation." This requirement is designed to serve "the very

27    purpose of § 1292(b)—to facilitate early disposition of the action by getting a final decision on a

28    controlling legal issue sooner, rather than later [in order to] save the courts and the litigants

1  unnecessary trouble and expense." *Haw. ex rel. Louie v. JP Morgan Chase & Co.*, —F. Supp. 2d—,
2  No. 12-00263 LEK-KSC, 2013 WL 391024, at \*6 (D. Haw. Jan. 29, 2013) (internal quotation
3  marks omitted).

4  Resolution of the property interest issue now will materially advance the ultimate
5  termination of this case and others. The Summary Judgment Order resolved the question of liability
6  on plaintiff's constructive fraudulent transfer claims, but left for trial other fraudulent transfer
7  claims that turn on the same question of law, as well as all damages issues, which themselves are
8  complicated and present many novel, untested theories. This case and the other three related cases
9  are now ready for trial. The Bankruptcy Court has set a status conference in all four adversary
10 proceedings for May 7, 2013, "to schedule trial and take up any other matters." ECF No. 148 at 39.
11 Orrick and two of the other defendants in these cases made timely demands for jury trial.[4] At the
12 May 7 status conference, Orrick will propose that the parties and the Court should proceed to
13 withdraw the reference and proceed to a jury trial in the District Court (subject to the decision on
14 this motion for leave to appeal).[5] If Defendants are correct that the Bankruptcy Court erred in
15 failing to grant summary judgment to Defendants, then correcting that error now will render all of
16 the trials unnecessary, thus conserving significant judicial resources.

17 An interlocutory appeal at this time would be particularly valuable for another reason—it
18 "may also materially advance the conclusion of other cases involving this same legal issue."
19 *Krangel v. Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal.1992); *see also Hawaii*, 2013 WL 391024, at
20 \*6. A favorable decision on the appeal would resolve not just this case, but for all practical
21 purposes, the three other lawsuits that Heller has filed against other law firms on the same theory.

22

23  [4] *See* ECF No. 33 (Orrick's June 23, 2011 Answer to Second Amended Complaint and Demand for
    Jury Trial); ECF No. 26 in *Heller Ehrman LLP v. Davis Wright Tremaine LLP (In re Heller*
24  *Ehrman LLP)* (Bankr. N.D. Cal. Case No. 10-ap-03210) (July 1, 2011 Answer to Second Amended
    Complaint for Avoidance of Fraudulent Transfers); ECF No. 28 in *Heller Ehrman LLP v. Foley &*
25  *Lardner LLP (In re Heller Ehrman LLP)* (Case No. 10-ap-03213) (July 1, 2011 Answer to Second
    Amended Complaint for Avoidance of Fraudulent Transfers).

26  [5] The right to a jury trial applies to fraudulent transfer claims. *Granfinanciera, S.A. v. Nordberg*
    492 U.S. 33, 64-65 (1989). The jury trial must be in the District Court where as here the District
27  Court has not "specially designated" the Bankruptcy Court "to exercise such jurisdiction" and
    Orrick has not given its "express consent." 28 U.S.C. §157.
28

1 At the same time, there are at least four other bankruptcies pending in this and another jurisdiction

2 arising out of major law firm dissolutions in which the debtor law firms are pursuing claims against

3 other law firms for so-called unfinished business profits.[6] Other law firm failures are unfortunately

4 likely to follow, making this a recurring problem for defendant law firms. Together, this state of

5 affairs makes it all the more crucial to get the controlling legal questions governing potential

6 liability resolved expeditiously at the highest appropriate judicial level. To that end, all four

7 defendant law firms are committed to seeing this litigation through that legal process, which may

8 ultimately require certifying the issue to the California Supreme Court, which, in California, is the

9 legal body responsible for the laws governing lawyers. *Santa Clara County Counsel Attorneys*

10 *Ass'n v. Woodside*, 7 Cal. 4th 525, 542-44 (1994).

11 **IV. SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION EXIST AS TO WHETHER A LAW FIRM SUCH AS HELLER EVER HAD A PROPERTY**
12 **INTEREST IN FUTURE PROFITS OTHER LAW FIRMS WOULD EARN ON HOURLY RATE MATTERS PREVIOUSLY HANDLED BY THE DISSOLVED**
13 **LAW FIRM.**

14 The final factor to evaluate in considering a request for interlocutory appeal is whether there

15 are "substantial grounds for difference of opinion" on the questions presented for appeal. 28 U.S.C.

16 §1292(b). The "substantial grounds for difference of opinion" element of the Section 1292(b) test is

17 met here because the question presents a novel and difficult question of first impression. *Reese v.*

18 *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (courts "traditionally will find that

19 a substantial ground for difference of opinion exists where . . . novel and difficult questions of first

20 impression are presented" (citation and internal quotation marks omitted)). In *Reese*, the Ninth

21 Circuit explained, "[a] substantial ground for difference of opinion exists where reasonable jurists

22 *might disagree* on an issue's resolution, not merely where they have already disagreed. Stated

23

24 _____
[6] *See, e.g, In re Howrey, LLP*, No. 11-31376 (DM) (Bankr. N.D. Cal.) (MPA of Haynes & Boone
25 LLP in support of Motion Confirming Automatic Stay Is Inapplicable, ECF No. 1087 at 2) ("The
Howrey estate's unfinished-business suits are only just beginning, with only six firms out of dozens
26 sued thus far, and no answers have even been filed yet."); *In re Thelen LLP*, No. 09–15631 (ALG)
(Bankr. S.D.N.Y.) (two current adversary proceedings involving *Jewel* claims); *In re Coudert*
27 *Brothers LLP*, No. 06-12226 (RDD) (Bankr. S.D.N.Y) (adversary proceedings based on *Jewel*
claims currently involving ten law firms); *In re Brobeck, Phleger & Harrison LLP*, No. 03-32715
28 (DM) (Bankr. N.D. Cal.) (two current adversary proceedings based on *Jewel* claims).

1 | another way, when novel legal issues are presented, on which fair-minded jurists *might* reach

2 | contradictory conclusions, a novel issue may be certified for interlocutory appeal without first

3 | awaiting development of contradictory precedent." *Id.* (emphasis added).

4 |       **A.    This Case Presents Unsettled Questions Of California Partnership And Property Law.**

5 |

6 |       The alleged property interest here is based on partners' statutory duty "[t]o account to the

7 | partnership . . . for [] any property, profit, or benefit derived by the partner in the conduct and

8 | winding up of the partnership business." Cal. Corp. Code §16404(b)(1).  The statute does not

9 | describe such "unfinished business" as an asset of the partnership, but rather as a fiduciary duty that

10 | may be modified. *See id.* §§16404, 16103(a).  Whether one can extract a "property interest" from

11 | this fiduciary duty is the novel question presented here.

12 |       Heller's Plan of Dissolution modified the statutory duty to account and excluded hourly rate

13 | matters from the Firm's unfinished business. *See* ECF No. 64-4 at 10.  That agreement governs.

14 | Cal. Corp. Code §16103(a).  As a result, hourly rate matters were not part of Heller's unfinished

15 | business and, therefore, absent bankruptcy, Heller's creditors would have no claim for profits

16 | derived from services performed exclusively by other firms on hourly rate matters. *See Jewel v.*

17 | *Boxer*, 156 Cal. App. 3d 171, 176 (1984) (no duty to account where there is an agreement to the

18 | contrary); *Fracasse v. Brent*, 6 Cal. 3d 784, 791-93 (1972) (if a client replaces one law firm with

19 | another, the terminated firm has a claim only for the *quantum meruit* value of the services *it* actually

20 | performed).  Plaintiff suggests that the *Jewel* Agreement "waived" Heller's rights and so was a

21 | fraudulent transfer, but the effect of the *Jewel* Agreement is not a waiver of a preexisting right;

22 | rather, under the Revised Uniform Partnership Act, it precluded that right from ever arising.  As a

23 | result, there was no right to waive. *Cf. Pilch v. Milikin*, 200 Cal. App. 2d 212, 227 (1962) (a

24 | partnership's goodwill is not property under California law if the partners have agreed there is no

25 | goodwill upon dissolution).  The mere fact a bankruptcy was filed cannot create a property interest

26 | where there was none to begin with under state law. *Gaughan v. Edward Dittlof Revocable Trust*

27 | *(In re Costas)*, 555 F.3d 790, 797 (9th Cir. 2009).

28 |

1        Even if this post-dissolution fiduciary duty had some characteristics of "property" prior to

2 dissolution, courts must balance those characteristics against California public policy protecting

3 clients. *See, e.g.*, *Geron v. Robinson & Cole LLP (In re Thelen LLP)*, 476 B.R. 732, 735 (S.D.N.Y.

4 2012) ("*Thelen*") ("this concept of law firm 'property' collides with the essence of the attorney-

5 client relationship. That relationship springs from agency law, not property law. The client is the

6 principal, the attorney is the agent, and the relationship is terminable at will"). The purpose of

7 California's Rules of Professional Conduct ("CRPC") is "to protect the public and to promote

8 respect and confidence in the legal profession." *Chambers v. Kay*, 29 Cal. 4th 142, 156 (2002); *see*

9 *also* CRPC 1-100(A). Several of those rules reflect the principle that the interests of the clients

10 must prevail over purely economic interests of lawyers and others who do business with lawyers.

11 *See, e.g.*, CRPC 1-320, 2-200(A). This principle applies with equal force in the context of law firm

12 dissolutions. *See* State Bar of Cal. Standing Comm. on Prof'l Responsibility & Conduct, Formal

13 Opinion No. 1985-86 ("the interests of the clients must prevail over all competing considerations if

14 the practitioner's withdrawal from the firm or the firm's dissolution is to be accomplished in a

15 manner consistent with professional responsibility").

16        Indeed, California courts have applied property laws differently to lawyers and law firms.

17 For example, the goodwill of a business generally is considered to be property under California law

18 (*see, e.g.*, *WMX Techs., Inc. v. Miller*, 80 F.3d 1315 (9th Cir. 1996) (business goodwill is a property

19 right under California law)), but the sale of the goodwill of a *law* practice must comply with

20 specific ethical requirements. *See* CPRC 2-300 (permitting sale of goodwill of a law practice with

21 proper notice to clients if substantially all of a law practice is sold, and business is not sold in a

22 piecemeal fashion). This is one example of how an intangible interest may be deemed property in

23 some circumstances, but not others, to the extent that recognizing it as a property right may be

24 contrary to California public policy. The distinction between law partnerships and other

25 partnerships is particularly relevant where, as here, the client's legal representations are at issue.

26 *See Thelen*, 476 B.R. at 742 ("A pending client matter is not an ordinary article of commerce.

27 Contrary to [*Coudert*], an hourly fee matter is not akin to 'a Jackson Pollack [sic] painting' that a

28 departing attorney 'rip[s] off the wall of the reception area'").

---

1    This Court already has acknowledged the Bankruptcy Court's conclusion that Heller's

2  "claims rest[] on unsettled questions of California property and partnership law." ECF No. 28 in

3  Case No. 12-01148 CRB (N.D. Cal.) at 5:20-21. Similarly, in the Bankruptcy Court's summary

4  judgment ruling in *Brobeck*, which the Bankruptcy Court has adopted without change in the

5  Summary Judgment Order, the Bankruptcy Court wrote that "[t]his case presents the court with a

6  matter of apparent first impression: a dramatic intersection of well-established and necessary rules

7  appropriate for the winding up and dissolution of a law firm with the equally well-established

8  principles recognizing the rights of third-party creditors to protect them from the adverse financial

9  consequences of an otherwise valid transaction." *Greenspan v. Orrick, Herrington & Sutcliffe LLP*

10  *(In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318, 325 (Bankr. N.D. Cal. 2009). This Court

11  also concluded that the Heller and Brobeck cases "are not truly factually distinguishable." ECF No.

12  28 in Case No. 12-01148 CRB (N.D. Cal.) at 5:21-22.

13    **B.    The District Courts In *Thelen* And *Coudert* Have Concluded That The Property Issue Meets The Standards For Interlocutory Appeal.**

14

15    Since the Brobeck decision in 2009, two federal District Court judges in two other law firm

16  bankruptcies have determined that similar issues under a nearly identical New York statute should

17  be certified for interlocutory appeal. *Thelen*, 476 B.R. at 732 (Pauley, J.); *Coudert II*, 2012 WL

18  2952929, at *5 (McMahon, J.). In *Thelen*, Judge Pauley determined that no such property interest

19  exists under New York law, but does exist based on current California intermediate court decisions.

20  *Thelen*, 476 B.R. at 743, 745 (citing, *inter alia*, the *Brobeck* decision). However, he pointedly

21  expressed doubt that the California Supreme Court would interpret the duty to account so

22  expansively: "Notwithstanding its humble beginnings, some lower courts have applied the *Jewel*

23  doctrine expansively, with untoward consequences for the bar and clients. In th[is] District Court's

24  view, there is good reason to believe that the highest courts of New York and California would

25  decline to follow suit." *Id.* at 745. Judge Pauley certified the property interest question to the

26  Second Circuit for immediate review, explaining in part that "certification of these questions to the

27  New York Court of Appeals and the California Supreme Court may be warranted because those

28  high courts have 'not squarely addressed' the issues, and the scope of the unfinished business

doctrine is of great importance to both the legal profession and clients." *Id.* (citation omitted). The Second Circuit ultimately denied review in that case, having already granted leave to appeal the same issue in the *Coudert* case. ECF No. 22 in Case No. 11-cv-8967 (S.D.N.Y.) (copy of Second Circuit order denying motion for leave to appeal).

Judge McMahon reached the opposite conclusion in *Coudert*, evidencing that reasonable jurists differ on this issue. *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert Bros. LLP)*, 480 B.R. 145 (S.D.N.Y. 2012) ("*Coudert I*"). But Judge McMahon, just as Judge Pauley did, expressed doubt over the continued validity of applying the unfinished business rule to legal representations: "The desire to protect client choice in selecting counsel may well augur for adopting a rule that *no* unfinished legal representation is an asset of a dissolved law partnership (as opposed to any other type of professional services partnership)." *Id.* at 173. Judge McMahon accordingly invited the defendant law firms to move for certification to the Second Circuit, which they did "in the hope that the Second Circuit will take the cases and certify the questions of state law to the New York Court of Appeals." *Coudert II*, 2012 WL 2952929, at *2. In certifying the case to the Second Circuit, Judge McMahon concluded that the property interest issue was "difficult and present[ed] substantial ground for disagreement." *Id.* at *7; *see also id.* at *8 (noting that if her ruling "stands for any proposition at all, it is that existing law does not give a clear-cut answer to the question"). The Second Circuit accepted the certified questions for review. ECF No. 43 in Case No. 11-cv-5994 CM (S.D.N.Y.) (copy of Second Circuit order granting petitions for leave to appeal).

## C. The District Court's Orders Granting Certification In *Thelen* and *Coudert* Are Relevant To The "Substantial Ground For Disagreement" Inquiry On This Motion.

The orders by District Court in *Thelen* and *Coudert* to certify the property question for interlocutory appeal are relevant and persuasive here.

1      First, California's Legislature has instructed courts to construe the act "to effectuate its

2 general purpose *to make uniform the law with respect to the subject of this chapter among states*

3 *enacting it.*" Cal. Corp. Code §16108 (emphasis added).[7]

4      Second, the questions presented in this case and in *Thelen* and *Coudert* are substantively

5 similar. The initial question presented in all three cases asks whether the unfinished business

6 doctrine can *ever* apply to the post-dissolution profits earned on a dissolved law firm's unfinished

7 hourly rate cases. Orrick agrees with the other defendants in these cases that the answer to that

8 question is no—as a matter of public policy, dissolved law firms should not be deemed to have a

9 property right in profits earned on hourly rate matters that would be akin to the type of property

10 right enforceable against someone who walks out of a law firm with a piece of art or a valuable

11 computer. If this Court agrees with Orrick and the other defendants, that ends the matter. But even

12 assuming it were possible under some circumstances for a dissolved law firm to have a right to

13 future profits earned by other law firms on hourly rate matters, in this case, the Court has one more

14 task to do in addressing the question presented: it must determine whether, under California law, the

15 existence of the Jewel Agreement prevented such a property right from coming into existence at all.

16 If the Jewel Agreement prevented such a property right from coming into existence, then nothing

17 was transferred by the Jewel Agreement. This narrower question is subsumed by the broader issue

18 presented in *Thelen* and *Coudert*.

19      In California, courts "must look to the circumstances existing *on the date of dissolution* of a

20 partnership, not events occurring thereafter, to determine whether business is unfinished business of

21 the dissolved partnership." *Jewel*, 156 Cal. App. 3d at 178 (emphasis added). And in California,

22

23      ---

[7] In fact, the bankruptcy estates in *Thelen*, *Coudert* and this case all rely on similar statutory
24 language to assert that the estates owned property interests in unfinished business. *Compare* N.Y.
Partnership Law §43(1) ("Every partner must account to the partnership for any benefit, and hold as
25 trustee for it any profits derived by him without the consent of the other partners from any
transaction connected with the formation, conduct, or liquidation of the partnership or from any use
26 by him of its property") *with* Cal. Corp. Code §16404(b)(1) ("A partner's duty of loyalty to the
partnership and the other partners includes all of the following: [] To account to the partnership and
27 hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and
winding up of the partnership business or derived from a use by the partner of partnership property
28 or information, including the appropriation of a partnership opportunity").

1  partners can agree among themselves whether there will be any unfinished business to account for.

2  Cal. Corp. Code §16103(a) ("Except as otherwise provided in subdivision (b) [which is not

3  applicable here], relations among the partners and between the partners and the partnership are

4  governed by the partnership agreement"). Thus, in California, the unfinished business rule—the

5  duty to account for unfinished business profits—has been held to apply only "in the absence of an

6  agreement to the contrary." *In re Brobeck*, 408 B.R. at 326 ("The unfinished business rule provides

7  that, *in the absence of an agreement to the contrary*, partners have a duty to account to the dissolved

8  firm and their former partners for profits they earn on the dissolved firm's 'unfinished business'")

9  (emphasis added). Here, as in *Brobeck*, there was an "agreement to the contrary." The Bankruptcy

10  Court's determination in *Brobeck* and again in this case that there was a fraudulent transfer turned

11  on that court's belief that prior to the time those agreements were entered into—in other words,

12  prior to the firms' respective dissolutions—Brobeck and Heller had a property interest in future

13  profits earned on hourly rate matters by third parties such as Orrick.

14  As Orrick urges, and as recognized in *Thelen* and *Coudert*, resolving this question involves

15  balancing several competing public policies and reconciling several discrete bodies of law, each of

16  which developed to serve different purposes—those involving property law, partnership law, the

17  laws governing lawyers and bankruptcy law. The novel claims presented in this case seek to use

18  bankruptcy laws to create a property interest that contradicts other well established legal principles

19  and flies in the face of recognized public policy concerns.

20  The standard set by *Reese* is more than met here: reasonable jurists not only "might

21  disagree" on its resolution, there is evidence that they already have. *See Reese*, 643 F.3d at 688.[8]

22

---

23  [8] If the Court grants the motion to accept the interlocutory appeal on the question presented, Orrick
   asks the Court to address the other issues presented in plaintiff's motion for partial summary
24  judgment: (1) whether, at the time of the alleged transfer, Heller reasonably should have known that
   it would incur debts beyond its ability to pay; (2) whether Heller received less than reasonably
25  equivalent value for the alleged transfer; and (3) whether Orrick had knowledge of the voidability of
   the transfer and did not take for value. The Court has the power to consider these additional issues.
26  *Reese*, 643 F.3d at 688-89; *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (review not
   automatically limited solely to the question deemed controlling). The Court should exercise its
27  discretion to ask the parties to brief these issues because, *even if* the Court were to find that Heller
   had an enforceable property interest, these issues are questions of law that are determinative of *all*
28  of plaintiff's fraudulent transfer claims, and deciding them could moot the need for any trial.

**CONCLUSION**

For the forgoing reasons, the District Court should grant Orrick leave to appeal and establish a schedule for the parties to submit briefs on the merits pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure.

Dated: April 15, 2013                    ARNOLD & PORTER LLP

                                         By: */s/ Jonathan W. Hughes*
                                             JONATHAN W. HUGHES

                                             Attorneys for Defendant ORRICK,
                                             HERRINGTON & SUTCLIFFE LLP

- 13 -
ORRICK'S MPA ISO MOTION FOR LEAVE TO APPEAL                     10-03234 DM